| | |
|---|---|
| SIEGEL TEITELBAUM & EVANS, LLP<br>260 MADISON AVENUE, 22ND FLOOR<br>NEW YORK, NEW YORK 10016 | MCLAUGHLIN & STERN, LLP<br>260 MADISON AVENUE<br>NEW YORK, NEW YORK 10016 |

September 17, 2015

**VIA ECF & E-MAIL**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY 10007

        Re: *Mirra v. Jordan*, 15-cv-4100 (AT) (S.D.N.Y.)

Your Honor:

  SIEGEL TEITELBAUM & EVANS, LLP and MCLAUGHLIN & STERN, LLP represent Defendant in the above-referenced matter.  Pursuant to Your Honor's Individual Practices and Rules, we write to request a pre-motion conference.  Defendant wishes to move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

  As a threshold matter, we submit that New York rather than Pennsylvania defamation law applies to the alleged defamatory statements pleaded in the Complaint.  Under New York Civil Rights Law § 74, every one of the alleged defamatory statements are absolutely privileged, and, thus, non-actionable.  Accordingly, Counts One and Two (Libel and Slander), must be dismissed.  Count Three (False Light Invasion of Privacy) must be dismissed because New York does not recognize such a tort.  In addition, all the alleged defamatory statements are non-actionable statements of Ms. Jordan's opinion, requiring dismissal under both New York and Pennsylvania law. Finally, the Complaint contains other fatal deficiencies:  (i) some of the allegedly defamatory statements are time-barred by the applicable statute of limitations; (ii) some of the allegedly defamatory statements are not defamatory, as a matter of law; and (iii) Plaintiff has failed to plead actual malice.

### I. New York Defamation Law Applies

  Federal courts sitting in diversity apply the choice of law rules of the forum state, which in the instant matter is New York. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941).  In tort actions, New York courts apply the substantive law of the jurisdiction that has the most significant interest in "the specific issue raised in the litigation." *Schultz v. Boy Scouts of Am., Inc.,* 65 N.Y.2d 189, 196 (1985) (citation omitted).  "New York courts have refined their interest analysis to develop more specialized choice of law rules in the context of defamation suits." *Weinstein v. Friedman,* No. 94 CIV. 6803 (LAP), 1996 WL 137313, at *8 (S.D.N.Y. Mar. 26, 1996) *aff'd*, 112 F.3d 507 (2d Cir. 1996).  As such, in defamation cases *where the allegedly defamatory statements were published nationally*, the traditional "presumptive" rule in favor of the law of the plaintiff's domicile "does not [necessarily] hold true." *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1091 (S.D.N.Y. 1984).  Instead, such cases assess, analyze and balance salient factors including "where the plaintiff suffered the greatest injury"; "where the statements emanated and were broadcast"; "where the activities to which the allegedly defamatory statements refer took place"; and "the policy interests of the states whose law might apply." *Condit v. Dunne,* 317 F. Supp.2d 344, 353-54 (S.D.N.Y.  2004).

  Moreover, in *Davis* the Southern District held that, when the publication is national and the harm to the plaintiff would occur nationally "the state where defendants' significant acts and omissions gave rise to their liability is the most appropriate source of legal norms, particularly

when it is also the forum state." 580 F. Supp. at 1093. The court reasoned that the law of the state in which the defendant acted should apply because "libel is less plaintiff-centered than other torts." *Id.* Specifically, libel rules have "widespread implications" for the interests of the actual defendant in a given case and potential defendants in the jurisdiction, in terms of liability, free speech rights, and due process rights. *See id.*

Indeed, following *Davis*, numerous Southern District cases have held that New York law applies when the defendant is domiciled in New York or New York is the defendant's principle place of business, and the defendant's actions giving rise to the defamation claim occurred in New York – even when there is an out of state plaintiff, and the actions that are the subject of the defamation claim took place outside of New York. *See, e.g.*, *Weinstein*, 1996 WL 137313, at *9 (New York law applied because the defendant's principle place of business was in New York, and the defendants' actions - writing, editing and publication – took place in New York, even though the plaintiff was domiciled out of state, and the actions that were the source of the alleged defamation took place out of New York); *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 359-60 (S.D.N.Y. 1998) (New York law applied when New York was the defendant's principle place of business, the place of emanation of the article containing the allegedly defamatory statements, and the forum state, even though the plaintiff was domiciled in Georgia and, thus, the " likely" greatest harm to the plaintiff occurred in Georgia, and the principal activities which were the subject of the alleged defamation took place in Georgia); *Levin v. McPhee,* 917 F.Supp. 230, 235–36 (S.D.N.Y.1996) *aff'd on other grounds,* 119 F.3d 189, 195 n. 4 (2d Cir. 1997) (New York law applied because the defendant- author resided in New York, defendant-publishers were headquartered in New York, and the conduct at issue – publication – took place in New York, even though plaintiff was a non-domiciliary of New York, and the conduct that was the source of the defamation claim took place outside of New York); *see also Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 286 (S.D.N.Y. 2006); *Zerman v. Sullivan & Cromwell*, 677 F. Supp. 1316, 1318 (S.D.N.Y. 1988); *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc*., No. 06 CV 11407 (BSJ), 2007 WL 4820968, at *4-5 (S.D.N.Y. Sept. 18, 2007); *Lerman v. Chuckleberry Publishing, Inc.,* 521 F.Supp. 228, *rev'd on other grounds*, 745 F.2d 123 (S.D.N.Y. 1981).

Applying these principles, New York is the state with the most significant relationship to the instant matter. First, New York is the forum state, the Defendant is currently domiciled in New York, and she was domiciled here at the time the allegedly defamatory statements were made. In addition, the "defendant's acts. . . [that] gave rise to [her potential] liability," *Davis*, 580 F. Supp. at 1093, all occurred in New York. That is, Ms. Jordan made the allegedly defamatory statements on the website gigijordantruth.com (the "website"), which was published in New York, and in an interview for the *Dr. Phil* program, which was conducted at Rikers Island, in New York.

Second, the allegedly defamatory statements relate to Ms. Jordan's criminal trial in New York, which is another factor favoring the application of New York law. *See Arochem Int'l, Inc. v. Buirkle*, 767 F. Supp. 1243, 1247-48 (S.D.N.Y. 1991) *aff'd*, 968 F.2d 266 (2d Cir. 1992) (statements' reference to litigation pending in California was a factor in the decision to apply California law); *Keough v. Texaco Inc*., No. 97 CIV. 5981 LMM, 1999 WL 61836, at *5 (S.D.N.Y. Feb. 10, 1999) (statements made in connection to a New York litigation was a factor favoring New York law). Indeed, here, most of the statements don't simply reference the trial, but come directly from court testimony or report on papers submitted in that case. *See, infra*, p. 4.

Third, New York has a strong policy interest in this litigation. As a national center of broadcast journalism, it has a "has a policy interest in regulating the conduct of the media," *Test

*Masters Educ. Servs., Inc.*, 2007 WL 4820968, at *4-5, and a particular interest in providing a "hospitable climate for the free exchange of ideas." *Immuno AG v. Moor–Jankowski,* 77 N.Y.2d 235, 249 (1991).

Finally, to the extent the Plaintiff suffered any injury, it was to his reputation nationally and not concentrated in Pennsylvania. As noted above, where, as here, the publication is nationwide, "the tort . . . injures plaintiff everywhere at once," rather than in his place of domicile. *Condit*, 317 F. Supp. 2d at 353. Moreover, here, Plaintiff himself has claimed that his injury is to his national reputation. Plaintiff emphasizes that the allegedly defamatory statements negatively affected his business. *See* Compl. ¶¶ 81-90. As the vast majority of Plaintiff's business is national—focused in New York, California, and Florida, rather than concentrated in Pennsylvania—any purported injury would be incurred nationally. Thus, here, the Plaintiff was not most injured in his state of domicile, and this factor does not point to applying Pennsylvania law.

## II. All Allegedly Defamatory Statements are Absolutely Privileged because they are Fair and True Reports of Judicial Proceedings

Civil Rights Law § 74 provides "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding. . ." "Where the parties have submitted the allegedly defamatory passages to the court, the court may determine as a matter of law whether allegedly defamatory publications are 'fair and true' reports of official proceedings." *Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 457 (E.D.N.Y. 2013) (citation omitted). As a threshold requirement, the Section 74 privilege applies when the publication "purport[s] to comment on a[] judicial . . . proceeding." *Saleh v. New York Post*, 78 A.D.3d 1149, 1151 (2d Dep't 2010). This is determined, in turn, by whether, based on the context, the ordinary viewer, listener or reader would determine that the defendant was reporting on a judicial proceeding. *See id.* at 1151-52.

"The case law has established a liberal interpretation of the 'fair and true report' standard of Civil Rights Law § 74. . ." *Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (2d Dep't 2009). A "fair and true" report must be only "substantially accurate." *Holy Spirit Ass'n v. New York Times Co.,* 49 N.Y.2d 63, 67 (1979). "[T]he language used [in the publication]. . . should not be dissected and analyzed with a lexicographer's precision." *Id.* at 68. "It is sufficient that the plaintiff's complaint or documents referred to therein form the basis for each of the contested statements." *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 217–18 (E.D.N.Y. 2012); *see also Geiger v. Town of Greece*, 311 Fed. Appx. 413, 417 (2d Cir. 2009) (even use of "more colorful language" is protected if it does not "suggest more serious conduct than that actually suggested in the official proceeding").

The Section 74 privilege extends to out of court reports of all publicly filed documents, including "pleadings, transcripts, live proceedings and the release by the parties of background material regarding their positions in the case." *Riel v. Morgan Stanley*, No. 06 CV 524 (TPG), 2007 WL 541955, at *10 (S.D.N.Y. Feb. 16, 2007) *aff'd sub nom. Riel v. Stanley*, 299 F. App'x 91 (2d Cir. 2008); *see also Tacopina v. O'Keeffe*, No. 14 CIV. 8379 PAC, 2015 WL 5178405, at *6 (S.D.N.Y. Sept. 4, 2015) (explicitly stating that the privilege applied to all "publicly filed documents," and ruling that it was irrelevant whether the report was of an allegation that appeared in the complaint or an affidavit); *Russian Am. Found., Inc. v. Daily News, L.P.*, 109 A.D.3d 410, 412-13 (1st Dep't 2013) (summarization of an FBI affidavit that was submitted to court was protected under Section 74). Even reports on evidence that a judge ruled inadmissible are still protected by the Section 74 privilege. *See Fine v. ESPN, Inc.*, No. 5:12-CV-0836 LEK/DEP, 2013 WL 528468, at *4 n. 9 (N.D.N.Y. Feb. 11, 2013) (report on an affidavit that the

court ruled not relevant was still privileged under Section 74). Indeed, no case that Defendant is aware of has held that the report must be on evidence deemed admissible to be protected. In addition, numerous cases have held the privilege extends to out of court statements made by parties in the litigation about the litigation. *See, e.g.*, *D'Annunzio* 876 F. Supp. 2d at 220-21 ("It is irrelevant that Plaintiffs, as parties to the action, issued the statements. Section 74 applies to 'any person,' not just to journalists or attorneys.").

Moreover, the Section 74 privilege also extends to statements that are "background" to the proceeding, including "statements or allegations that *go beyond* matters in the proceeding." *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 216-17 (N.D.N.Y. 2014) (emphasis added); *Fishof v. Abady*, 720 N.Y.S.2d 505, 505 (1st Dep't 2001) (the privilege "extends to the release of background material with regard to the [proceeding]"); *Ford v. Levinson,* 454 N.Y.S.2d 846, 847-48 (1st Dep't 1982) (attorney's statement in newspaper article that did "not clearly and directly fall within any of the allegations of the complaint," was privileged because it constituted "background to the misconduct attributed . . . in the complaint rather than a separate and independently defamatory accusation").

Under these controlling principles, the website and the *Dr. Phil* program meet the threshold requirement of purporting to comment on a judicial proceeding, as the ordinary reader and viewer would determine that the defendant was reporting on a judicial proceeding. *See Saleh*, 78 A.D.3d at 1151. Everything discussed on the website concerned the, at the time, ongoing criminal proceedings against Ms. Jordan, including testimony received, opening and closing statements, and evidentiary rulings by the trial court. Similarly, on *Dr. Phil*, the opening headline is "Millionaire Mom accused of murdering her son speaks from Rikers Island." Throughout the program, Ms. Jordan and Dr. Phil discuss her testimony, the prosecutor's allegations, and her defense. Thus, Defendant meets the threshold requirement for applying Section 74, as both the website and the Dr. Phil program purport to comment on a judicial proceeding.

Significantly, all the allegedly defamatory statements on the website and the *Dr. Phil* program are privileged under Section 74 because they were either (i) statements made in open court in the criminal trial against Defendant; (ii) contained in documents submitted to courts in support of Ms. Jordan's defense in the criminal trial against her, or in her two civil cases, or in exhibits filed in those cases; or (iii) "background material regarding [Ms. Jordan's] positions in [her] case[s]." *Riel*, 2007 WL 541955, at *10.

### III. All Allegedly Defamatory Statements are Non-Actionable Opinions Under Both New York and Pennsylvania Law

New York and Pennsylvania have similar law regarding non-actionable opinion. In both jurisdictions expressions of opinion that rely on disclosed facts are not actionable. *Chau v. Lewis,* 771 F.3d 118, 129 (2d Cir. 2014); *Parano v. O'Connor*, 641 A.2d 607 (Pa. Super. Ct. 1994). Only if the opinion implies "the existence of undisclosed defamatory facts" is it actionable. *Chau,* 771 F.3d at 129; *Mzamane v. Winfrey,* 693 F.Supp.2d 442, 481 (E.D. Pa. 2010). Whether a given statement is opinion or fact is a question of law for the trial court. *See Mr. Chow of New York v. Ste. Jour Azur S.A.,* 759 F.2d 219, 224 (2d Cir. 1985); *Green v. Mizner,* 692 A.2d 169, 174 (Pa. Super. Ct. 1997).

Both states look to context and the effect on the average reader or viewer when determining whether the statement is non-actionable opinion. *See Gross v. New York Times Co.,* 82 N.Y.2d 146, 153, (1993); *Remick v. Manfredy,* 238 F.3d 248, 261 (3d Cir. 2001). Moreover, in both states, "even apparent statements of fact may assume the character of statements of opinion . . . when made in public debate, heated labor dispute, or other circumstances in which

4

an audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole." *Karp v. Hill & Knowlton, Inc.*, 631 F. Supp. 360, 365 (S.D.N.Y. 1986); *see also Remick,* 238 F.3d at 262-63 (law firm defendant's letter to plaintiff referring to plaintiff's efforts to "extort" money from defendant firm's clients was an expression of opinion "in the context of two lawyers taking diametrically opposing legal positions").

Here, Ms. Jordan's allegedly defamatory statements were made in the context of a criminal defendant articulating her defense in a highly publicized murder trial, *see, supra*, p. 4, and the average readers of the website and viewer of *Dr. Phil* would know she was expressing her opinion. Moreover, all the allegedly defamatory statements cited in the Complaint were supported by disclosed facts. Thus, all the statements are non-actionable expressions of Ms. Jordan's opinion.

### IV.    Additional Grounds for Dismissal

The Complaint contains additional deficiencies, upon which Defendant will move for dismissal. First, Plaintiff's claims regarding some of the allegedly defamatory statements are barred by the one year statute of limitations in defamation claims because they were originally published prior to May 28, 2014, for example on the website, gigijordanbail.com (a website that Ms. Jordan had posted in 2011, which contained information about her case). *See Hoesten v. Best*, 34 A.D.3d 143, 149-51 (1st Dep't 2006); *Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623, 627-28 (W.D. Pa. 2014). Second, the statements Ms. Jordan made on *Dr. Phil* are not defamatory as a matter of law, as they do not "tend[] to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, . . . .[or] to deprive him of their friendly intercourse in society." *Foster v. Churchill,* 87 N.Y.2d 744, 751 (1996) (citation omitted); *see also Golub v. Enquirer/Star Group, Inc.,* 89 N.Y.2d 1074, 1076 (1997) ("whether particular words are defamatory presents a legal question to be resolved by the court") (citation omitted); *Thomas Merton Ctr. v. Rockwell Int'l Corp*., 497 Pa. 460, 464 (1981) (a publication is defamatory only if it tends to harm plaintiff's reputation "so as to lower him in the estimation of the community or deter others from associating with him," and it is the function of the court to determine whether the challenged publication is capable of defamatory meaning). Third, Plaintiff is a limited purpose public figure for the purposes of a defamation claim, and Plaintiff has failed to sufficiently meet the "onerous task" "in the era of *Iqbal* and *Twombly*" of pleading that Ms. Jordan made the allegedly defamatory statements with actual malice, i.e., that she knew the statement was false when she made it or recklessly disregarded whether it was false or not. *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013); *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 571 (S.D.N.Y. 2014); *see also Earley v. Gatehouse Media Pennsylvania Holdings, Inc.,* No. CIV.A. 3:12-1886, 2013 WL 5466149, at *6 (M.D. Pa. Sept. 30, 2013) (noting that "[i]n the wake of *Iqbal* and *Twombly,* adequately pleading actual malice is an onerous task" and dismissing the defamation claim because plaintiff did not plead facts supporting the allegation of malice).

Sincerely,

| | |
|---|---|
| /s/Norman Siegel | /s/Steven Hyman |
| SIEGEL TEITELBAUM & EVANS, LLP | MCLAUGLIN & STERN, LLP |
| Norman Siegel | Steven Hyman |
| Sharon Sprayregen | Alan Sash |

*Counsel for Defendant*